Appellate, Mr. Axsom for the Appellate, Mr. Lannix for the Appellate. Mr. Axsom, I suppose we still have some questions about that FERC case. Would you be able to answer them for us? I'm at a loss. I didn't understand anything while it was going on and still don't. That's disappointing. May it please the Court, Counsel, Tony Axsom representing Anthony James, and I'd like to reserve three minutes for rebuttal. The Court should reverse Mr. James' conviction because the government's drug expert testified as to the defendant's mental state in violation of Federal Rule of Evidence 704B. Rule 704 prohibits an opinion about whether a defendant did or did not have a mental state or condition that constitutes an element of the crime charged. And while the government avoided the use of the word intent in asking questions of its drug expert, it essentially asked the expert to opine about the mental state of the defendant. In one question, it asked, based on your calculations and your viewing of this item, what is your opinion as to whether the person who possessed this bag was a distributor or a user? That was just a roundabout way of asking what was the intent of the person who possessed the bag. The second question was no better, and this related to the multiple ziplocks. What is your opinion as to whether this bag was something possessed by a distributor or someone who was using it for personal use? Predictably, the expert gave the answer that the government would expect, and under this Court's precedent, intent doesn't have to be used. If there is a strategy of going around the precedent in this circuit and Rule 704 simply to have the jury conclude that the intent of the person was distribution, it's a violation. The problem for you is not the underlying question but the lack of an objection, which puts us into our precedent about plain error. There was not an objection. The leading and almost exactly same case, except that case was even worse, is U.S. v. Miller, where the person, the drug expert, was asked whether or not it's consistent with an intent to distribute, which actually used the I word. In that case, the expert had said that he didn't know anything about specific facts, which is the same thing the expert said in this case, and we said that that was not clear and obvious and therefore doesn't overcome the plain error question. How is this distinguished? I get all of your arguments about this, and I feel a little bit like the government seems to have forgotten what the rule was. As I look through the cases, there's a big period where there aren't any cases anymore because our drug experts appear to be getting the right questions and giving the right answers, and here we are again. But we have a problem of the failure to raise an objection and then our plain error case, which seems directly on point. Well, I would disagree with the Court that it's directly on point. I believe in the Miller case the drug expert repeatedly said, I don't know anything about this defendant, I don't know anything about this case. And there was, at the beginning of the testimony in Mr. James' case, there was a question as to whether the drug expert knew about the case, and he said no. But first of all, the drug expert's testimony was over two days in this case. So that the jury would remember something that needed to be emphasized, especially when you were coming up close to the line of impermissible testimony, I think is a stretch. And I think that distinction is important, whether it's harmless or whether it actually establishes the prejudice that we have to show. What about the closing argument? That's another distinction in this case. In the closing argument, the government argued that the intent was easy. And it was easy because, in this case, because the expert had already provided that testimony. And I think the Court was right. Isn't it just common sense that a large amount of something that you possess that's not commonly used in the house is going to be for distribution? So if you have 1,000 boxes of Girl Scout cookies, you're probably not eating them all. You're distributing them. You're selling them. So, too, if you have a certain amount of drugs, you're probably not using it all. You're probably distributing it, except that jurors may not understand how much is a user amount. So all the expert's doing is telling you this is not the typical user amount. It could be the person could defend by saying, actually, I was a user, not a distributor. But isn't that all the expert's doing here? I would agree that there would not be a problem with that if that's all the expert was doing. But the expert was not doing that in this case. The expert was not asked, how many dosages do you get out of the quantity of drugs that are here? Even as we stand here today, we don't know how many dosages would be reasonable so that a jury could draw that common-sense conclusion. Here, the expert was asked whether this quantity, 33 grams in one case and 5 grams in the other,  There was lead-up where the expert described the common crack users, how much they're using in particular, by amount of money, I guess, so you'd have to do the math to extrapolate on that because he did the amount that this represented, too. Well, I think that's a different question. The expert did testify about the common size of purchase by a user and said it's often a $10 purchase. And this was several thousand dollars worth, which you could say I was stockpiling for use, but that would be something for the jury to think about. The expert was, as I understood it, merely describing what the common usage amount is in dollars, and then the jury could take it from there. Well, I would disagree. I maintain that the question is improper. There was no quantity included in the question, although the government referred back. But I would suggest to the Court that that's simply an avoidance strategy. I'm not sure whether that's a fair description of the questions and answers right afterwards. The expert says that they'll often come up with a $10 piece of crack or $20. They will immediately ingest it. Their life is what they call a hustle. They don't have the means to purchase large-scale amounts such as this. Yes, one part of typical expert testimony is how much you use at a certain time, but this seems like a perfectly appropriate. This part of the testimony is certainly appropriate, isn't it? There's no problem with that testimony. This is a big chunk, and they normally don't have enough money. Then they go on. Crack users don't have access to the individuals that sell the 33-gram chunks as you see here. That's a general statement that we would certainly allow experts to say. Isn't that right? That's correct. All right, so it seems like the context, which comes immediately after that question, is an explanation of what actually happens with respect to users and distributors and not this user or distributor. Well, that's the problem because you do get to this ultimate question that we are challenging, and it's no longer users in general or distributors in general. It's the person who had this crack, and what the law prohibits is an expert from testifying about the special knowledge of the defendant's mental process, and this person, the only person accused of having this crack is the defendant. So the expert is squarely testifying about Mr. James at this point. He is not talking in general. So maybe the lead-up questions are proper. We're not objecting to the lead-up questions. Again, I'm not in any way suggesting that the questioning was not error. I'm asking the question whether it was plain error in light of our case law, and the case law seems to say, even if they use the word intent, it's still not clear and obvious unless there's no context in general provided, and here it says even when the prosecutor uses the I word in formulating a question, there's no Rule 704B violation if it's made clear the expert has no knowledge of the actual case, and he did say that, and even where it approaches the type that is a carbon copy of the matter before the jury, it's not okay, but it's not clear error unless a plain error, unless there's no context provided, which indicates that the expert is talking about what happens on the street. I believe in each of those cases the context provided is either something corrective by the court saying I'm only talking about, I know that obviously it's correct that you've got a better, there's a difference, but Miller is the case that's. Or the witness himself saying, although I don't know anything about this case with regard to that question, I understand there's, in general, the expert can say I don't know anything about the case, but it is important, and I think this Court has recognized that it's important, that when you get to the improper question, the jury needs to be reminded that the expert is not talking about the defendant in general, and all I'm saying is the question here left no other conclusion except the expert was talking about this defendant, and he was not, he did not qualify it with, although I do not know this defendant or the mental processes of this defendant. I'm sorry to interrupt. What about the fact that the defendant himself at closing basically said, or did say, the only dispute I have is whether I possessed those drugs, so on the prejudice prong. There are two ways you could defend against a large amount being found in your house. One is actually I was a user and was stockpiling, and the other would be they weren't mine. Here the defense seemed to be they weren't mine. I believe that that would, that is correct. The defendant's main defense was possession. That doesn't mean that the government was relieved of its burden to prove intent through a proper means, and that's our objection here, that they did not prove the intent properly. Can I ask you a question on the counsel issue, which is on standby counsel, the Second and Seventh Circuits have said there's no such thing cognizable as ineffective assistance or standby counsel, and why are they wrong? I think their understanding of the, there is a right to counsel, and in this case the defendant, though he chose to represent himself during the colloquy, giving up the right to have counsel, specifically said that I need assistance with my witnesses and investigation. So to the extent that the right exists, the defendant can waive the right, but where he does not waive it completely and retains and the court ratifies that retention, which is what the court did here. The court did not advise him that no, you are on your own for investigation. You are on your own for witnesses. And throughout the proceedings, repeatedly, when witnesses are discussed, standby counsel is the person who answers. What the court told the defendant when he waived his right to counsel was that he would have to examine witnesses, make objections, and argue motions. Your position has a lot of logical appeal. The government says, though, that standby counsel would then be required to do enough to avoid being ineffective but not so much as to interfere with the defendant's right to represent himself. So that's the concern that they have about recognizing what you're saying as being a new freestanding claim. How do you respond to that? I understand that concern, but the court can, could have, in this case, could have said, no, you are standby counsel. You will submit your investigation request through me. I will give them to the investigator, and we will proceed in that matter. The court could have required the defendant to entirely waive his right to counsel. The court did not require that, and it's inconsistent with the right to counsel, which is, it would be inconsistent to punish the defendant for exercising the right within the limitations set out when he, when he gave up that right. My question is why we address this on this appeal rather than relegate the defendant to filing at 2255. You're, you're resting on Rashad, which says normally we send it back to the district court. However, in both, the theory of Rashad is because the defendant didn't have an opportunity to make the argument in the district court because he had the same counsel. Here he had a new counsel, and in DeBango and Fennell, we said where there's a new counsel, if you don't make the ineffective assistance claim against the trial counsel when you had the chance, then you can't raise it on direct appeal. You have to do what you do in every other circuit, which is to file a habeas. Why doesn't that apply? Why doesn't the Fennell rule and the DeBango rule apply? I guess I would take issue with what the Court's referring to as the Fennell and DeBango rule. In a 2255 context, the defendant is in a very different situation than when he is appealing under Rashad. Well, I don't think there's any doubt about that. But all the other circuits don't let you raise ineffective assistance on direct appeal. You raise them otherwise. I mean, you can raise them, but we have a general practice of remanding for an evidentiary hearing, and the reason is that the defendant didn't have the opportunity to make that first claim in an evidentiary hearing before the district court. In this case, it does. In DeBango, we said we note that when counsel changes prior to appeal, when there's still a reasonable opportunity to challenge a conviction in the district court, a criminal defendant bears the usual obligation to raise issues and introduce evidence in the trial court in order to preserve his claim on appeal. And in this case, it is true, isn't it, that, in fact, he originally made that argument in the trial court, and then his new counsel, who is a real counsel, not just a standby counsel, waived that position? Well, the first thing I would say is that Rashad itself does not hinge on whether you have a new counsel or whether you have the original counsel. And I'm ‑‑ Why do you think Fennell doesn't decide that question in DeBango? Why it does not decide it? Yeah. Because this court believes and stated in Rashad that this court has a view of eliminating a technical barrier to an ineffective assistance of counsel claim. So that's the quotation from Rashad, which you put in your brief. This court's, quote, general practice is to remand the claim for an evidentiary hearing, close quote, unless, quote, the trial record alone conclusively shows, close quote, that the defendant either is or is not entitled to relief. That's what you rely on, right? Yes, I do. You know, the problem with that, though, that is a quotation from Fennell. Well, in other words, Rashad is based on Fennell, and Fennell has a caveat, which is when you do have counsel below, and if you read Rashad, it's right, it is the citation that is the basis for that claim. The quotation comes from Fennell. Well, what I would say, when you do have new counsel below, and new counsel has failed to recognize the ineffectiveness of the prior counsel, the court has not actually solved the problem. If the rationale, the overarching rationale is not to place barriers on the defendant to raise ineffective assistance of counsel claims, and there is ineffectiveness, and the second attorney at the trial level also does not recognize it, there is no greater burden on this court to accept it on direct appeal. Fair, but can I just follow up? There's just one problem with that, which is you are not claiming that the second trial counsel was ineffective, right? There's no ineffectiveness claim. That is correct. And you're not claiming that he was ineffective in failing to carry through on the ineffective assistance claim. In fact, that paper says Mr. James at this time withdraws his motion for new trial based on the ineffective assistance of counsel claim against standby counsel. But there is no requirement that it be included. Every time you have new counsel, that new counsel raise all ineffectiveness claims. Rashad doesn't say that, and Fennell doesn't say it. Rashad says. It did not create a requirement for new counsel to raise all ineffectiveness claims. Rashad is simply removing the barrier to raising ineffectiveness claims. I think I understand that it may be more efficient to have the new counsel raise them. I'd also understand. Let me ask you a question. This is not, as I understood your brief, you think the record is adequate as it exists to establish the violation. That's correct. In other words, the transcript is perfectly clear as to the role of Mr. Sussman. That's correct. So this is not a case where the legal question is not teed up. It's not unclear about the facts that would require an evidentiary hearing in the normal ineffective assistance of counsel case. That might be an argument you could make. The other thing I want to just explore here a little bit is, and this is sort of teeing it up for the government. The government, as you know, appears as the prosecutor in the District of Columbia court system. It was counsel in the Ali case, and that case was decided many years ago by the D.C. Court of Appeals. Recognizing the situation that exists here, namely, unlike the federal cases where they are not dealing with the Sixth Amendment right to counsel at trial itself, but dealing with some collateral proceedings where those courts said there is no Sixth Amendment right to counsel. Here, at least the Ali court said, no question there is a right to counsel at trial, and when the trial proceeds in this hybrid manner, then the Sixth Amendment right extends at least to that portion of the trial handled by standby counsel. So I couldn't find that the in-bank court, despite all the former members of the U.S. Attorney's Office who headed the appellate division who are members of that court, has ever changed that understanding of the Sixth Amendment in this hybrid counsel context that's at issue here. And that's why I was particularly interested, and I'll see how the government responds. I mean, the government's brief simply says, well, we have some state court cases, but they don't give any legal justifications for their holdings or attempt to reconcile their approach with Torna and Coleman. Well, that's not the way I read the D.C. Court of Appeals opinion at all. So we have that where the United States is the prosecutor in the local court system, and it has been living with this rule for many, many years. And maybe the issue doesn't come up very often, so it's had no occasion in recent years to seek a petition for rehearing in-bank. But that is the law that the U.S. Attorney faces when it's prosecuting felons in the District of Columbia court system. So I wondered in that sense, is not that this case on all fours? Whereas I didn't find any of the Federal Circuit cases to be on all fours. The Ali case is this case on all fours. The more common occurrence in the Federal cases is the habeas context where there is no right to counsel, and those are the cases that the government largely cites. But where you have a right and the court has recognized that right and afforded you hybrid representation, the Sixth Amendment demands that the person assisting you be competent. And I would like to just remind the Court that this situation was unique because Mr. James represented himself and only was appointed new counsel at the sentencing phase. And the original claim, which was just a bare-bones claim that his trial of counsel had been ineffective, was filed by Mr. James originally. When he was appointed counsel for sentencing, that counsel withdrew it. There was no indication that it was withdrawn with prejudice, that he was abandoning it, that he had waived it, or that the Court ever had it. I'm still on the question of whether he waived it for purposes of the appeal. And Judge Rogers asked you a question about whether the record is complete here. So my understanding is that when the Court asked the standby counsel who wrote the date on the piece of paper, counsel responded, I don't know. And when the ineffective assistance of counsel claim was raised below, the government filed a motion for waiver of the attorney-client privilege, assuming there was one. And it was at that point that the new counsel said, well, we don't want a waiver. We don't want any questions going to the counsel because we're not going to raise that question. So that raises the question, actually, of whether there is a full record here. If we were to send it back down, it would be a chance for the government to continue and ask counsel, did you put the date down there? Did your client put the date down there? It would be an opening for the government to ask the defendant, did you tell your witnesses to come the next day? Did you tell them they didn't have to come that day? So we don't actually know. We don't have a record. Now, all that may be speculation, and it may be that this is all the counsel's fault, in which case we would then have to ask the question of whether there is a right to counsel in the first place. But I don't think we have a record here yet, even assuming there is a right to counsel, that counsel was ineffective until we know how it came to be that the witnesses didn't appear until after the case was over. Your Honor, I respectfully disagree. Once the attorney, the standby counsel, had the obligation to get the witnesses there, assumed the obligation, told the court that he was in the lead on doing that, when he passed up a subpoena and did not know what — I don't think that his answer is going to change if this was remanded for him to re-answer the question as to how that information got on the subpoena. Now, there may be some truth out there that the government could figure out through other witnesses, but in terms of the responsibility of the attorney who was supposed to subpoena, he abdicated. I got that. But that goes only to the first point. It doesn't go to the prejudice prong. And if it turned out it was the defendant who told the witnesses not to come, maybe because he — again, I'm totally speculating. But if the defendant told the witnesses not to come because he was afraid of what they would actually say or for any other reason, that would go to the prejudice prong, not to the ineffectiveness prong, to the deficient representation prong. I think that the record strongly undermines any theory such as that because on the 16th, when the witnesses were supposed to be there, the defendant said, and I am waiting for specifically Tanya James, my wife. We did not hear anything else about that on that date. So that he didn't want her or didn't — you're correct, it's speculation, but we know that he told the court. My witness, I'm waiting for her to come here. But the point is we would know the answer to those questions if they had followed through with an already begun ineffective assistance of counsel claim in the district court. This isn't even the case where there's a new counsel and he could have thought of the idea of ineffective assistance. This is a case where there's a new counsel with an ineffective assistance claim already raised, which the new counsel then decides not to make and which no one argues the new counsel was ineffective for failing to make. That's all I have. Right. But where there's no obligation, this isn't a civil proceeding where there's an obligation or a requirement. Rashad doesn't place those types of requirements. And you can withdraw really any argument. I could withdraw an argument right now. There may be a disagreement between us on the meaning of Rashad in combination with DeBango and Fennell, which I think stand for the proposition that if you have a new counsel, the general Rashad approach doesn't apply. That's all. I understand. We may disagree with that. All right. I'll hear from the Governor. Good morning, Judge Garland, and may it please the Court. If I might start with Judge Kavanaugh and Judge Rogers' questions about the merits of the defendant's Sixth Amendment claim as to the effective assistance of standby counsel and whether that right exists at all. His claim in that regard is both legally and factually flawed. As a legal matter, he's effectively saying that he has a constitutional right both to represent himself and, at the same time, have the representation from counsel. And the Supreme Court in McCaskill and this Court in Washington directly rejected that proposition. But you agree that facts were different. All right. In other words, it wasn't where the trial court had condoned the hybrid situation. I'm not aware of any court, Your Honor, that has drawn the distinction based on the scope of the waiver to say that that somehow creates a constitutional right to the effective assistance of standby counsel. Well, I just cited you a case. Ali doesn't address this argument that the Supreme Court found in Wainwright and in Coleman that where there is no right to representation by counsel, there can be no right to effective assistance. And it didn't look at the scope of the waiver in that case. It didn't look at the language of the waiver. Ali looked at what the counsel actually did. But in both Wainwright and in Coleman, the counsel actually affirmatively represented the habeas petitioners in this case. So just in a hypothetical situation, the defendant wants to represent himself under Ferretta. And he says to the district court judge, but I need assistance in this part. And the judge says, fine, let's proceed. And so standby counsel is asked by the district court judge to take over Part A. In that circumstance, there can be no ineffective assistance of standby counsel if, suppose, he doesn't do Part A. And Part A, let's hypothetically say, is critical to the defendant's defense. I was asking. I haven't seen the cases, only the Ali case. Maybe it comes up so infrequently, but it was odd here that this wasn't clarified by the district court here. That's what I couldn't understand. I don't believe you would have an ineffective assistance claim in the circumstance Your Honor posits. Schmidt and Morrison and Battaglia in the Seventh Circuit, at least a couple of those cases, and I don't remember which, talk about the fact that the defendant did not have the right to the type of hybrid representation that existed in those cases. In other words, the attorneys took over some part of the representation. And the courts in those cases said that may be true as a matter of fact, but the defendant didn't have that right. And thus, the defendant may not claim ineffective assistance of counsel. The Feretta right of self-representation comes from the same source as the right to be represented by counsel, the Sixth Amendment. It's a binary right. It's one or the other. So the problem here is that we would hope in the future that the district court judge would say to the defendant, you can get whatever assistance you want, but you'll never have any claim of ineffectiveness by that assistance. I think that would be an appropriate thing for the district court to say. And as I started, not only is the defendant's claim in this case legally flawed, it's also factually flawed. If you look at what the district court and the defendant actually said during the right to counsel waiver, the defendant said that he talked about having problems with witnesses coming to the jail and speaking to him in private. He was concerned about the fact that typically you have to speak with witnesses in recorded conversations on a screen, and that the attorney could meet with that witness in person. So when he said, I don't want to have problems with my witnesses, he was talking about a very narrow circumstance of meeting with them at the jail and the privacy of his discussions. Well, we actually know it went further than that. Issuing subpoenas on the right day, making sure they sign up, show up for court. The district court made clear that the investigator, who was the person tasked with doing that, was the defendant's investigator. The district court said that during this waiver. It said you'll have the use of the investigator that has been retained in connection with this case speaking to the defendant. So what do you understand the role of standby counsel to be in these cases? Is it just as an assistant to the trial judge to keep the defendant from filing, you know, voluminous motions, multiple motions, acting inappropriately, not understanding the process? Judges don't have to appoint standby counsel at all. We know that. Most judges do. I assume they do it mostly for the court's benefit, to make sure that the proceedings run smoothly, that the defendant knows the rules of evidence. So maybe the defendant has to be told that too. I'm not aware that any court has ever found the – No, but it's an interesting observation, isn't it? If I'm the defendant and the judge tells me, look, I've got somebody I want to work with you who's really my intern, that intern is a lawyer, but it's my staff that's working with you. This is not somebody you should assume in any way is working for you. The court made that – well, the court made clear to the defendant that he had to file motions, he had to make arguments, he had to examine witnesses. The court told the defendant, you'll be in charge, you'll be making the decisions. You're more familiar with this than I, but in most of the cases I've seen, it's where the defendant wants standby counsel to be an active player in the trial itself, questioning witnesses, making an argument, et cetera. And that's not this case. This is all the behind-the-scenes work that an incarcerated defendant can't do effectively. I agree that most of the cases in which the court has said you have no right to hybrid representation, as the court said in McCaskill, the Supreme Court, you have no right to choreograph special appearances by counsel. They're talking about these trial-type appearances. This defendant, however, had the same ability to manage the investigator that his attorney had. He had the same ability to tell the investigator, because it was clear that it was the investigator who served the subpoenas in the first place. And so he had the same ability as the trial attorney to tell the investigator who to serve, what days they should show up, how to remain in contact with them. And thus it was the defendant's responsibility in this case to do so. Making it all the more important for the district court judge to tell the defendant that this standby person is really the judge's assistant. To say it's really the judge's assistant I don't think does it credit. It obviously helps the defendant to have a legally trained person who can advise him as to what arguments to make, how this whole function works. I agree. I think it's likely the case that most courts do it, because from their point of view it makes the process go more smoothly. And it also allows the defendant, and this protects the defendant's rights, to withdraw his self-representation at any point. A key purpose of standby counsel is if a defendant at any given time chooses that he no longer wants to represent himself, standby counsel who's been there the whole time can take over the case at that point. And so that also protects the defendant's rights beyond his rights at trial to represent himself. As to going to Judge Garland's questions, I do believe that DeBango, where the – Can we just go back on Judge Garland's other question, which is on whether we have a record from which we could conclude. So assume for the moment that there is a Sixth Amendment right to the extent that the court provided limited counsel. Does that extend to the issuing of the subpoenas? Was that the job of the investigator? Do we know who put the work, you know, whether – is there an argument that the standby attorney, assuming he had a responsibility, was ineffective with respect to the subpoenas? There's an argument that he was not ineffective. First of all, he did not know who put that date on the subpoena. And as Your Honor asked, it could have been the defendant himself. The defendant never sought bench warrants or brought to the court's attention the fact that these witnesses were missing on the 16th. You know, I'm trying to get some witnesses to testify in my defense. I don't want them arrested. I can avoid it, all right, obviously. So, I mean, I understand those technical arguments, but in the real world, do you want to antagonize your witnesses when you're trying to get them? I mean, I thought the Weiss testimony, according to the record, was all supposed to support the defendant's defense about possession. We don't know what the wife would have said. No, but I'm saying what is in the record so far, so that she was a positive witness for him, not a negative witness, like the girlfriend turned out to be on rebuttal. He claims that he wanted his wife because his wife could have been a positive witness for him. His wife also had a fifth and could have said, yes, that was me, and yes, the defendant was in the apartment at the same time, and they were his drugs that I was selling to the informant. I agree with that, and who was going to tell the defendant that? The defendant, the wife was there on the 17th. No, no, no, no, that she was not going to testify because she was going to invoke her Fifth Amendment. That hadn't been hashed out yet at the time that, as of the 16th, the defense counsel noted that she had a fifth. So was your response to Chief Judge Garland that there are a number of factual questions that would need to be clarified at an evidentiary hearing? Yes, Your Honor, both as to prejudice but also as to deficient performance. In fact, even if the investigator made an error, even if we absolutely know it was the investigator who wrote the 17th and that he made that mistake, defense counsel, I've worked with this investigator for 20 years. I always rely on him to subpoena my witnesses for the correct date. He has never before subpoenaed them for the wrong date, and then his performance would not be deficient in, once again, relying on his investigator, in this case, to make sure that the witnesses arrived on the correct day. So there are lots of unanswered factual questions, and they're unanswered because the defendant, represented by new counsel, withdrew his ineffective assistance claim. And I do think that DABANGO stands for the proposition that, where the defendant both has the ability, the opportunity, and new counsel following trial to raise an ineffective assistance of counsel claim, he's in a motion for a new trial that he's barred from doing so on direct appeal and may, of course, bring it in a 2255, as in every other circuit. So was new counsel appointed for the purpose of sentencing, or just that wasn't the limit of the assignment? The new counsel was appointed post-trial for sentencing, but new counsel also filed a new motion for a new trial, and the judge had instructed her to bring all claims in the motion for a new trial, and new counsel also took responsibility for doing that. And that motion had no ineffective assistance of counsel claims in it. And I take it also address the question of what the defendant's position was with respect to that, at least for the moment? That was ahead of time. So the defendant filed these pro se motions for a new trial. The government, in response to those which raised the ineffective assistance claim, moved to find a waiver. New counsel filed a statement. On the July 10, 2018, defendant's motion for acquittal in new trial, who did that one? His counsel. That's his counsel? Yes. And in that one, they address, he says, Oh, I'm sorry. In the footnote, it should be clear these claims, that is, the ineffective claims, would be submitted separately as part of a 2255 motion, if at all. Accordingly, defendant is deferring those claims for consideration, if at all, under 2255. That's a, this shouldn't be such a big surprise. It's page 112. I missed that. I don't know what it's page 112 of. It was filed in our court on September 11, 2017. It was filed in the district court on July 10, 2014. I'm sorry, Your Honor. That's the defendant's pro se. That's the pro se one. That's the pro se motion. In response to that, the government sought a waiver. Wait, wait, wait. This one is signed by Keira Ann West. Yeah, that's new counsel. PC Bar number 993523. That's the new counsel, right? I'm sorry, Your Honor. I was looking at a different page, 112. Yes. Ms. West was his appointed counsel for purposes of filing the new trial motion, and she is the one who filed this, saying that he's going to submit them as part of the 2255. Can we move to the expert testimony? Why is the government falling down on the job again? It seemed like everything was going very well up until the moment of Miller, and your recollection was refreshed about how to counsel both expert witnesses and prosecutors about how to ask these questions. All you have to do is, is it consistent with, rather than use the word intent and make clear, why are we, what's happened here? The question was inartfully worded. It did not use the word intent, Your Honor. I know, but you must realize there's a problem because your brief does not argue no error. It argues no plain error. This is a good signal from the U.S. Attorney's Office that it understands there's a problem. The U.S. Attorney's Office and the trial attorney understands that the question was poorly worded. I don't actually think, and this is splitting hairs, I don't actually think there is Rule 704 error because fundamentally the question for whether error exists at all is whether it is clear that the expert is testifying on the basis of his knowledge of general criminal practices and not on some special knowledge of the defendant's mental process. But that's the only reason I mentioned the closing argument by the prosecutor. I mean, at least the prosecutor thought that's what the expert had testified. I would disagree with your reading of the closing argument. I don't believe the government in closing argument focused on the poorly worded questions as opposed to the expert's testimony as a whole. And the expert's testimony as a whole, absolutely. He told you who distributed. I don't believe the prosecutor said that. The prosecutor said the intent is easy. You can look at the expert's testimony. Yes. And the expert had ample testimony about the amounts at issue here, the amounts of typical user uses. But, you know, jurors use their common sense. All right. Prosecutor says it's easy. Look at the expert's testimony. And the expert's testimony. He distributed. The expert's testimony in context was clear that the expert who had no first-hand knowledge of this case, who was not an arresting officer. So your argument before this court suggests that we are going to face more, to quote, This is the same reason I asked the question. I was hoping the government's answer was we will put into our training programs a model for how to ask these questions which do not create error. We will ensure that our prosecutors don't ask as poorly worded questions as these again. I recognize these questions were badly worded. The trial attorney who is now in management recognizes they were poorly worded. We don't expect this type of poorly worded questions to repeat themselves. I am splitting hairs as to whether it was error at all because I think the question of whether it was error at all looks to the context of the testimony. And the context of the testimony was entirely made in terms of common users, common distributors, the general practices of the drug trade in the District of Columbia. And I think that the context of the testimony as a whole makes clear that no jury would have understood these two questions to all of a sudden switch focus from general practices to this specific defendant, particularly where the answers immediately went after the poorly worded questions to general practices. I don't think we have to spend any more time on this. Thank you, Your Honor. No, I mean, we can go to the plain error. I agree, Your Honor. If there are no further questions, the government would ask that the judgment of the District Court be affirmed. Does Mr. Perrekson have time left? We'll give you another two minutes. The Fert lawyer was able to encapsulate an hour and a half argument into only two minutes, so I'm sure you'll be able to do this. I would like to say something about Dabango and Fennell, which were both pre-Rashad cases. They were, but Fennell relies on Dabango and Rashad relies on Fennell. And when Rashad explains what our position is, it's based on that line of cases. And the position is a policy position. This Court has adopted a policy, and a policy that is designed to allow defendants to bring in effective assistance of counsel claims in a sense of what is fair and a system that is designed to streamline or make things efficient. And Rashad simply articulates that fairness and efficiency. Part of that is that you have to have counsel to understand whether your prior counsel was ineffective. And if Ms. West was possibly ineffective, Mr. James needed counsel to know that. But now he has that counsel, and you are that counsel, and you have not raised the point. I would feel differently about this if you were arguing that Ms. West was also ineffective in not raising it, but you're not arguing that. Well, I would say that neither Dabango nor Fennell nor Rashad turn on the presence of new counsel. They turn on fairness to the defendant and efficiency. And what the Court's suggesting, simply because we have new counsel, to insert a new rule into the Rashad line of cases that once you have new counsel, new counsel has to raise all of those ineffectiveness claims, otherwise that counsel is ineffective. And you've layered this twice. You have undermined Rashad efficiency. And you have placed another barrier in front of the defendant in terms of fairness. So the overarching rationales of Rashad, which Fennell and Dabango underlie and inform, are frustrated. So all I'm saying is, under the overarching rationale of Rashad, Mr. James should be allowed to bring this claim here, because the Court's ultimate goal is to get to the bottom of the ineffectiveness claim and to not place barriers and to streamline it. And it's unfortunate that Mr. James represented himself, put these claims in, and thought or was convinced or Ms. West, I don't know what the circumstances of removing them or withdrawing them, but just as with any litigation, when something's withdrawn without prejudice and there is no, in a 2255 context, that's Fennell, you have to raise everything in the 2255. And in Dabango, the defendant failed to prove prejudice after actually having a hearing. So in both of those cases, merits of the ineffectiveness claim were reached. In this case, there were no merits reached. The government didn't have to brief anything. They asked for the waiver, and the claim was withdrawn. So not only would the fairness and efficiency that Rashad sought to, like, create be distorted, there would be another part of any analysis of analysis in ineffectiveness claims whenever there was new counsel or the defendant was pro se or whenever there was a claim that was asserted and withdrawn. And I respectfully disagree that there is a requirement found anywhere in Rashad, Dabango, or Fennell that you must raise, whenever you are in the position to file a new trial motion with new counsel, you must raise all ineffectiveness claims. That would be a step beyond. I understand because it's a policy, the court can choose to. Well, a narrower point would be that once you've raised it, if your counsel expressly withdraws it and waives it for purposes of direct appeal, unless you challenge what your new counsel did, in that circumstance at least Rashad wouldn't apply. I think that is a fair point. I am in disagreement that the statement that the court read by Ms. West actually does that. I think the statement is very ambiguous. This memorandum supplements the insufficiency of evidence contention and does not supplement or discuss other motions, trial objections, or ineffectiveness claims against trial counsel, which he reasserts here. So it's unclear, is this what counsel is saying? Is Mr. James reasserting them here? It's completely confusing, but which can more properly be addressed later pursuant we all know that if there are other claims out there, they can be raised in a 2255 if they are not raised in this direct appeal process. But once they are decided in this direct appeal process, they cannot because of estoppel principles. And there is nothing inconsistent with that. It again goes right back to the twin goals of Rashad of fairness and efficiency.  Thank you.
judges: Garland, Rogers, Kavanaugh